Good morning, and may it please the court. My name is Rochelle Anderson, and I represent the defendant, Zachary Blasdel. We're here this morning because the district court failed to grant Mr. Blasdel's motion to suppress, and this court should reverse and remand. I want to begin by emphasizing this morning that Mr. Blasdel enjoyed the same expectation of privacy in the storage unit that he and his girlfriend were renting as they did their own home. And that's recognized by precedent in this court under Johnson. Is that right with the lease agreement, such as it was? I think so, it is, Your Honor. Well, you don't have a lease agreement with your home that says, come on in any time you want and invite the police along. That's accurate. You may, though, have one with a rented apartment, a rented office space, and you would still enjoy, specifically with regards to a residence, that same expectation of privacy. Because in Johnson, I think this court has been consistent in recognizing that when you have a secured area, like a home or like a storage unit, that it's reasonable to have a subjective belief that what you do and what you store in that area is going to be private, and that that's a societal expectation that if you put something in a home, you put something in a locked storage unit, that you have a reasonable expectation of privacy, and it's one that society would recognize. So I believe we start from that premise with regards to the expectation of privacy that Mr. Blasdale enjoyed. I want to turn to some facts that are in dispute and what's not in dispute, because I think that will be important to guiding this morning's argument. What's not in dispute is that Officer Doyle and Officer Lemons, who is a canine officer, collectively conducted three warrantless searches of the storage unit. And that was in violation of Mr. Blasdale's Fourth Amendment protections. But isn't there evidence that the employee let them in, an employee who had the right to be there? I think there is information in the record, Your Honor, that the employee saw that the storage unit door was open, and there was a male employee and a female employee. Both of those employees entered, and the door was open, and both officers testified at the suppression hearing. And I think the court found that they peeked in, they put their head across the threshold into that protected space. Yes, but the original first employee, when the door was ajar, under the agreement, had the right to enter to make sure it was safe, that nobody in there, that kind of stuff. And so she saw the gun on the desk and stuff that looked like drug paraphernalia. That is accurate, Your Honor. That's supported by the record. And there's no dispute that both of the employees, by entering the storage facility, there's no Fourth Amendment claim. They're private citizens. They could enter. They had an obligation to enter for safety concerns. And she told the police. She called the police because she was concerned about the gun and what looked like drug paraphernalia. That is accurate, Judge, yes. And didn't she tell them what she'd seen? She did tell them what she saw from the perspective of a civilian employee.  I'm sorry, Your Honor. But with that information, didn't they have the right to search? No, Your Honor. Why? Because Mr. Blasdale still enjoyed an expectation of privacy of the storage unit, and warrantless searches are presumed unreasonable. This is a curious case, and different than any that I remember seeing. And what if the officers had just come, heard from both of the employees at the storage unit, who said, we went inside, we saw firearms, we saw drug paraphernalia, we saw a money counter, we saw scales or whatever else, baggies. And the officer had said, well, one thing I'm not going to do is even look in there, but I'm going to rush down with this information and get a search warrant. That would have been probable cause, wouldn't it? I don't think so, Your Honor. Well, arguable probable cause? I don't think so. What if I disagreed with you and I said, I think that is arguable probable cause, where would that leave us? Well, Your Honor, I think we're tied back to the facts of this specific case. And there's evidence that the officers, specifically Officer Lemons, who took this step after entering a third time, or the officers entering the storage unit a third time and finally getting a warrant and finally preparing the affidavit. But he, I think there's evidence that he didn't even think that there was probable cause. And this goes, I think, to Judge- But we don't care. We don't care if he thinks that there was probable cause. What we care about is, was there probable cause? Reasonable, the objective officer. And what really I'm uncertain about with this case is that I think, at least for now, that there was at least arguable probable cause just based on what the employees told the officer. But then the officer doesn't write the affidavit that way. If the officer wrote, I talked to employee one and said, XYZ, I'm probably good. But the officer instead doesn't reference them and just says, there's methamphetamine in there. And what do we do with that? Because I don't blame the magistrate for signing that. There's methamphetamine in there, where do I sign? But it's not disclosed how the officer knows that. And what do we do with that? Judge Phillips, I agree that it's complicated by Officer Lemon's misrepresentations inside the search warrant affidavit and his failure to be clear on the facts that he discovered. But I do not think, and when we look at probable cause, we are bound to some extent by the four corners of the affidavit. But in this case, there was conflicting information between the two civilian witnesses. The female witness said that when she entered the storage unit, she saw a white powdery substance, she saw a gun, she saw a money counter, and I believe she said that she saw baggies. The male employee who also entered, he never testified to seeing any drugs. And that was also information as conflict between what the female employee saw, which is a white powdery substance, and the male employee never testifying and never reporting to the officers on scene that he saw anything. Well, the last thing you said, are you talking about Lemons or the dad? I'm talking about the father, the male employee. Well, okay, so once he's, I mean, you and I can look at the same thing and you notice something and I might not notice something, but the dad did notice something that the daughter didn't notice, and that was, I think you mentioned the digital money counter, but he also saw the scale. I think they both saw the scale. I believe that that's correct. Still, I think it's not illegal to own a scale, it's not illegal to own a money counter, it's not illegal to have these baggies. What was legal, or observed to be illegal in the storage unit, that the female employee saw that her father and the male employee didn't, potentially was the white powdery substance. But here's where I think that under Sims, we have to separate, we've been talking about separation this morning, wheat from chaff, you have to separate the observations of these, specifically just one, just the female employee, white powdery substance, from the training and reliability that's referenced in the search warrant affidavit when Officer Lemons reports to the magistrate judge and swears under oath in this affidavit, I'm a canine drug detection officer, I have years of experience, hundreds of arrests, tons of narcotics investigations, you can see this from plain view and he's making those representations and he's saying specifically with regards to the affidavit, I saw a white crystalline substance and recognized it to be methamphetamine from my experience as a probation officer. That white powdery substance does not turn into an illegal substance, let alone methamphetamine, until it's observed by an officer with training and experience to make that type of determination. And that is the issue that's presented under SIMS, we have to figure out a way to parse that out. And when you have a female employee who's just reporting, I saw a white powdery substance, that is not sufficient probable cause, even with the collection of other information, because Officer SIMS testified at the motion to suppress hearing, we get these calls all the time from people in the community, from civilians, without law enforcement training. And the DA, the district attorney that he reached out to said, go in and confirm, put your law enforcement training and experience eyeballs on that evidence and then come back and get the warrant. If it is actually, if you confirm it to be methamphetamine or some illegal substance, then come back and get the warrant. Can we even get to what the employee said when it's not in the affidavit? Isn't there a four corners rule or something? Your Honor, I think there is in United States v. Cotto, it says that we are bound to the four corners of the affidavit. Then why are we talking about the employees? Why are you talking about them more particularly? Well, I think specifically, Your Honor, because the district court said that the officers didn't discover anything by their illegal entry or unlawful entry into the storage unit that they didn't already know when they first got on scene and were in the parking lot and talked to the employees. What do we do? Okay. Looking at the affidavit, affidavit states, I could clearly see a white crystalline substance on a desk inside the unit, recognize it to be methamphetamine. That's the heart and soul of this. It's really tight, concise. Yet everyone concedes at this point, I think the government does, that he had to stick his head in to see that and that that constitutes a search. And so if you take a pen and cross that out because it doesn't meet the plain view doctrine, then can, here's what I'm unsure of, can the government then pick up other facts at a suppression hearing and say, no harm, no foul, because we could have given a different affidavit that would have said this, that, or the other? Or are they just stuck with this? Your Honor, I think they're stuck with the four corners of the affidavit. Then why are we talking about the employees? Well, in the event that the court wants to look beyond that or to the extent that there's findings that the district court made based on the information that was testified to in the motion to suppress hearing. Don't we do just that? Don't we view the evidence of the white most favorable of the ruling on the denial of a motion to suppress? That is correct. But when we're looking at what is in the four corners of the affidavit, I think there is this tension between, do you credit the testimony at the motion to suppress hearing or do you look to the four corners of the affidavit? I think in United States v. Cotto, it was pretty clear that this court looks to the four corners of the affidavit when trying to identify the existence of probable cause. And I want to get to the next, I think, important point, that there is, and Judge Phillips alluded to this, but I want to be clear, there's no meaningful dispute by the United States or based on the record and the testimony at the motion to suppress if there's any type of a plain view. And that's misleading for Officer Lemons to have put in the affidavit. Turning to the inevitable discovery doctrine, but for the search, was the warrant going to be granted and applied for regardless? And I think the answer to that question is clearly no, based on the information in the record. And United States v. Sousa has a four-factor test, and all four of those factors weigh in favor of Mr. Blasdale. Specifically when it comes to the extent that the warrant process was completed, we know it wasn't completed when Officer Doyle entered. We know it wasn't even started when Officer Lemons entered the first of the two times that he entered. And he reached out to the DA, the district attorney, who told him, go into the storage unit, confirm whether or not this is methamphetamine or some other white powdery substance. The second factor of Sousa looks at the strength of showing a probable cause at the time of the search, and we talked about the contradictions between the information that the officers received on scene and the fact that I think there's evidence that Officer Lemons didn't even think there was probable cause until he went in and identified it as a law enforcement officer. The DA he spoke to didn't think that there was probable cause because he told him, go back in. What about the firearms? When they find out the next day that he's a felon, that's instant probable cause, isn't it? An inevitable discovery. That is potentially an inevitable discovery, Your Honor. I think that that was not an argument that the United States had raised specifically in the underlying briefing, but I do think that that could present another issue if the court decides to go past the four corners of the affidavit. The third factor under Sousa is was a warrant ultimately obtained, and I think the answer to that is clearly yes, but it was tainted by the unlawful entry into the storage unit and the information that officers obtained. And the fourth, and I think the strongest element here, was there evidence that law enforcement agents jumped the gun because they lacked confidence, and they're showing a probable cause. I think this is the unique case where that evidence is clear, where you have an officer who's entering and later testifies. He's confirming what is the substance based on his training and experience. And so inevitable discovery and that exception doesn't apply to the facts of this case, and I think this court has been hesitant to apply it where there's not another type of exception, such as a search incident to arrest or an inventory search. And this court cannot have confidence the same way that Officer Lemons and the district attorney who told him to enter did not have confidence in the existence of probable cause. And I see I'm out of time. I did intend to reserve a small amount of time for rebuttal. I would request to take that now. Robert, why don't you stop her clock? So this isn't cutting into your rebuttal. Okay. Thank you. We'll hear from the appellate. May it please the court, Jack Dowdell on behalf of the United States. The district court was correct to deny Mr. Blasdell's motion to suppress in this case because the affidavit for the storage unit search warrant contained only information that was conveyed to police officers from employees at the storage facility. That information supplied probable cause. How can you say that? The most important sentence affiant states that I could clearly see a white crystalline substance on a desk. I recognize that as methamphetamine. That has nothing to do with what the employees. Your Honor, you're correct. And I actually said that sentence in a way that was misleading that I'm glad you pointed out. The affidavit for the storage unit search warrant contained adequate probable cause based only on information conveyed to police before any Fourth Amendment violation. So that information consisted of an open storage unit, white powder, which was conveyed to police officers by Calista Dagenais, a gun. Where is that? I don't see that in the affidavit. So Calista Dagenais conveyed that she saw white powder. Are you reading me the affidavit or are you telling me the facts of the case? Because I know she says that, but it's not in the affidavit. And you're talking four corners. Yes, Your Honor. The four corners of the affidavit starts with strange behavior on the part of the defendant, but it also specifically said that the employee believed the item seen in plain view of the open door to be illegal narcotics. Now that's a broad term, which if you look at lower, and it would be lower in the affidavit, near the drugs were baggy scales, a firearm, and a digital currency counter. Those specific items were conveyed to police by the employees at the storage facility. Seen in plain view, that is so vague and ambiguous. The officer saw, the employee saw. I thought the idea was that the two employees went inside the storage unit and saw things, and the affidavit's talking about maybe plain view means after they went in there, but it doesn't say these employees reported to me that here's what they saw. Said that, I'm good. But with what this says, not so good. Correct, Your Honor. That's why I think it is important to refer to the testimony before the district court to add context to the items that are specified in this search warrant affidavit. The employee believed that the item seen in plain view of the open door to be illegal narcotics. That does clearly attribute that representation to the employee. I don't read it that way. Or at least I certainly read it two ways, which is the employee believed, so the employees told the officer something, that the items seen in plain view of the open door were illegal narcotics. Seen by whom? And what I take that to mean is the officer's feet stayed outside of the door, but the officer's eyes went inside the door, and he's saying plain view of the open door because my feet are out there. I'm not realizing the distinction that you can't be putting your eyes in there and doing the big lean.  And, Your Honor, I don't think by reading the search warrant affidavit that the officer says one way or the other, I stepped in there or I didn't, and that's why it's important to refer to the transcript of the hearing. Well, who gets the benefit of that ambiguity? Do you really get a second chance to come in and fill in gaps, and here's what we meant, and here's what we didn't say in our affidavit that we could have said, Your Honor, so please pretend that the affidavit said all of these other things and clear us. That's what I'm hearing, and if there's law to that effect, please tell me. What's the case that says that? I do not have a case for you, Your Honor, because as far as I know, one does not exist, and that is not what I wish to suggest here. But just that if we're looking at the four corners of the affidavit, a magistrate reviewing the information in this could reasonably infer that there's probable cause of a crime just based on those four corners. So resolve it in favor of the government. The magistrate can resolve ambiguities in favor of the government and a search warrant affidavit and go for it. Well, Your Honor, I apologize. I want to make sure I'm understanding your question correctly. I don't understand the ambiguities you're referring to. Ambiguities is who saw in plain view, and were the eyes inside or outside that open door. Correct. And the way I read it is the officer saying, I saw, because the officer's saying, I recognize that as methamphetamine, so it's got to be the officer's eyeballs. And he's saying an open door, well, that's true. But you can't put your head past the open door. You agree with that? Correct, absolutely, Your Honor. So what I would respond to that is that he does clearly say that the employees saw through an open door what they believe to be illegal narcotics. I don't see where it says that. Appian states that the employee believed the item seen in plain view of the open door to be illegal narcotics. Yes, Your Honor. I'm not sure I'm getting where you're getting out of that, but I don't want to chew up all your time on it. No, no, I appreciate the questioning. This affidavit could be more clearly written, there's no question. But when we look at the four corners of it, what we have to do, that sentence is the employees did see what they believed to be illegal narcotics. That goes towards probable cause. And then lower in the affidavit, it says near the drugs were baggy scales, firearm, digital currency counter. Now that on its face, through that sentence you don't know, did the police officer see it, did the employee see it? But when you consult the transcript, we can see on the record and the district court heard who saw what and who told the police officers what and how that got into the affidavit. The whole ballgame is who saw it. And can you? And you say you don't know any case where you have a poorly written affidavit like this one and the government's allowed to clean up on aisle seven at a suppression hearing and fill in gaps. And if the government can do that, okay. I'm reading that transcript for every line and detail. But first I need to know the government can do that and help. Well, what the case law says is that portions of a search warrant affidavit that put forth information that was obtained by police in violation of the Fourth Amendment, that can be excised from the search warrant affidavit. And if there remains adequate probable cause, then the search warrant stands. And I'm good with that. I understand that part of the law. So I take a big black marker and I cross off the heart of this, which is that the officer, as I read it, peered in through the open doorway and saw narcotics and then find out that wasn't plain view at all. And I scratch that off and there's not what's left. If there were a paragraph that said, here's what the employees told me, I'm good. But there's not. And, Your Honor, I don't know the extent to which you and I read it differently. And I don't want to harp too much on that first sentence that does clearly specify employees told me they saw what they thought were believed to be narcotics. Now, you mentioned the specific mention of methamphetamine. That you do put a marker through. The police officer is the one. He heard white powder. He heard suspected narcotics. He heard drug paraphernalia. And he put in here methamphetamine. You can put a black marker through methamphetamine. The government's argument is that with the line in this search warrant affidavit, employees told me they saw what they thought to be suspected narcotics. Then at the bottom they specify baggy scales, a firearm, and a digital currency counter. Those items were specifically conveyed to law enforcement before any Fourth Amendment violation. So to the extent there is a fruit of the poisonous tree argument, none of the information gleaned from the Fourth Amendment violation need be in this affidavit. You'll recall that one of the officers did walk in and open a drawer and take out a gun. He wisely did not put there was a second gun in this search warrant affidavit. Why did you rely on the lease agreement? I'm sorry, Your Honor? Why don't you rely on the lease agreement and its language that employees can come in and the police can as well? The lease agreement did not give the officers the right to walk in under these circumstances. It was a mistaken reading of it by Officer Lemons. We don't rely on it because the lease agreement also did not preclude firearms. It precluded ammunition, which there was, but that was not readily apparent before the search and seizure. If in any way I didn't address your question about the lease agreement, please. No, thank you. I've talked too much and you need to talk more, sir. No, I think that really fleshed out the argument. Since he invited you to do that, I'm going to chirp in. I just want to make sure that I understand your answers to Judge Phillips. Hypothetically, if we say that this affidavit excising the observations of Officer Doyle and Lemons, and we conclude that the remainder does not provide probable cause, but that the evidence that was elicited in the hearing on the motion to suppress does, what do we do then? In other words, are we confined to the four corners of the affidavit, or do we consider the combination of the affidavit with the excision of the unconstitutionally obtained material in combination with the evidence at the hearing on the motion to suppress? Your Honor, my understanding is that the district court did that. The district court looked at the four corners of the affidavit after hearing witness testimony, and if you actually look at the order that was issued, it acknowledges Officer Lemons violated the Fourth Amendment when he walked in and opened the drawer and found gun number two. Officer Lemons didn't put that in the affidavit. That's good. But the district court also said, these are the items that the court believes supply probable cause. And in doing that, the district court said nothing about methamphetamine. It did mention the white substance. Mr. Dede, you probably answered my question, but I'm just not sure that I understood it. So putting aside what the district court said, assuming we're on de novo review on whether there's probable cause, regardless of what Officer Lemons said, do we consider the evidence that was elicited at the hearing on the motion to suppress in addition to the affidavit with the excision of the unconstitutionally obtained material? Your Honor, I think you need to hear so that you can say, this piece of evidence was supplied by a private citizen working in the facility, as was this piece, as was this piece. That one wasn't, so we excise that one. So I do think that the testimony at the suppression hearing should advise your analysis of the four corners of what is put in this affidavit, what's properly kept in it, and what you need to excise and say, is there still probable cause? And then, Your Honors, I'm happy to move on to the second search warrant affidavit, which I don't know whether it was addressed in the appellant's time, and I know that they have more time, but there was a second search warrant acquired for Mr. Blasdale's home, which was, of course, based on the evidence recovered during the execution of his first warrant, which, if you find to stand, supplies heavy probable cause for the home. But then officers also, they got the address, obviously. They learned from employees' vehicles that, quote, frequented that home back and forth, and the magistrate, based on that and other information in that second search warrant affidavit, reasonably inferred that there might be evidence, contraband or evidence, of a crime at the house, and found probable cause for that. And so if you have any questions specifically about this second search warrant, I'm happy to answer them, obviously, in my remaining time. Robert, why don't you stop the slide? Thank you. And I hope I have an answer for the court that's clear. When it comes to United States v. Sims, Sims tells us what comes out. The unconstitutionally obtained information comes out. At a motion to suppress hearing, you're identifying what information that is. The government does not have the opportunity at that point in time to supplement the affidavit. The purpose of the motion to suppress hearing is to establish, was there a violation, and what information, if any, was unlawfully obtained and needs to be stricken. Thank you. Thank you very much. This matter will be submitted. We want to compliment both attorneys for your excellent briefs and your excellent arguments.